129 Nev., Advance Opinion 93

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ASPEN FINANCIAL SERVICES, INC.,
A NEVADA CORPORATION; ASPEN
FINANCIAL SERVICES, LLC, A
NEVADA LIMITED LIABILITY
COMPANY; AND JEFFREY B. GUINN,
AN INDIVIDUAL,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
ALLAN R. EARL, DISTRICT JUDGE,
Respondents,
and
DANA GENTRY, AN INDIVIDUAL,
Real Party in Interest.

No. 59894



FILED

NOV 27 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Petition for a writ of mandamus or prohibition challenging a district court order quashing a subpoena.

*Petition denied.*

Bailey Kennedy and John R. Bailey, Joseph A. Liebman, and Brandon P. Kemble, Las Vegas,
for Petitioners.

Campbell & Williams and Donald J. Campbell, Las Vegas,
for Real Party in Interest.

McLetchie Law and Margaret A. McLetchie, Las Vegas,
for Amici Curiae.

13-35855

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, DOUGLAS, J.:

In this opinion, we address whether a district court properly quashed a subpoena based on Nevada's news shield statute, NRS 49.275, which protects journalists from being required to reveal information gathered in their professional capacities in the course of developing news stories. We conclude that a request for protection under NRS 49.275 may be raised, as it was here, by a reporter's attorney in a motion to quash a subpoena, without the need to file a supporting affidavit, so long as the motion demonstrates that the information sought by the subpoena is facially protected by the news shield statute. Here, the privilege was properly asserted, and petitioners have failed to identify any circumstances to overcome its application. Accordingly, we deny the petition for extraordinary writ relief.

## FACTS AND PROCEDURAL HISTORY

Petitioners Aspen Financial Services, Inc., and Aspen Financial Services, LLC (collectively, the Aspen entities), are Nevada businesses specializing in mortgage brokerage and loan servicing, and petitioner Jeffrey Guinn is the majority owner of the Aspen entities.[2] Aspen was sued in the district court by investors alleging that Aspen had

---

[1]The Honorable Kristina Pickering, Chief Justice, voluntarily recused herself from participation in the decision of this matter.

[2]For ease of reference, the Aspen entities and Guinn will be collectively referred to throughout this opinion as Aspen.

breached various statutory, contractual, and fiduciary duties.[3]  Aspen denied the allegations and filed numerous counterclaims, including claims of defamation, disparagement of business, and breach of contract.  As relevant here, Aspen claimed that Dana Gentry, a local television reporter who was not a party to the action below, but who is the real party in interest to the writ petition, helped the investors investigate and prepare their lawsuit in order to manufacture news stories intended to embarrass Aspen.  Aspen also alleged that Gentry received personal favors from the investors and their associates in connection with these news stories.  During discovery in the investor litigation, Aspen served a subpoena on Gentry requesting information relating to alleged gifts provided to Gentry by the investors, work performed on Gentry's home by the investors, and the circumstances leading to Gentry's news station employing the son of two of the investors.

After being served with the subpoena, Gentry filed a motion in the district court to quash it.  Gentry argued that the information sought was protected by Nevada's news shield statute, NRS 49.275, which protects journalists from being required to reveal certain information gathered in the course of preparing news stories.  Aspen opposed the motion by making two arguments. First, as a threshold matter, Aspen argued that the district court erred in granting Gentry's motion to quash because Gentry failed to support her motion with an affidavit demonstrating the applicability of the news shield statute to the information sought. Second, Aspen asserted that Nevada's news shield

---

[3]The investor plaintiffs are not a party to this writ petition.

statute only applies to a reporter acting in his or her professional capacity and that the subpoena did not request any information gathered by Gentry in preparation for a news story, as Gentry had never run a story regarding her personal relationship with the investors. In referring to the subpoena, however, the opposition indicated that Aspen believed that the gifts referenced in the subpoena were provided to Gentry in exchange for favorable news coverage. Gentry filed a reply to the opposition, contending that the information was within the scope of the statute.

The district court granted the motion to quash, concluding that the information at issue fell within the protection of the news shield statute. The court noted, however, that Aspen may be entitled to some of the information if it could prove in a private evidentiary hearing that such information was "absolutely necessary" to Aspen's case. The court further indicated that it was concerned with the potential of the subpoena to harm Gentry's credibility. Aspen now requests that this court issue a writ of mandamus or prohibition directing the district court to vacate its order quashing the subpoena.

## DISCUSSION

A writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust or station, or to control an arbitrary or capricious exercise of discretion. *See* NRS 34.160; *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). A writ of prohibition may be used to arrest the proceedings of a district court when it has exceeded its jurisdiction. *Mineral Cnty. v. State, Dep't of Conservation & Natural Res.*, 117 Nev. 235, 243, 20 P.3d 800, 805 (2001). Both mandamus and prohibition are extraordinary remedies that are unavailable when a petitioner has a "plain, speedy, and adequate remedy in the ordinary

course of law," and both are issued at the discretion of this court. *Id.*; *see also* NRS 34.170; NRS 34.330.

Extraordinary relief is generally unavailable to review discovery orders because such orders may be challenged in an appeal from an adverse final judgment. *Diaz v. Eighth Judicial Dist. Court*, 116 Nev. 88, 93, 993 P.2d 50, 54 (2000). But, in certain cases, consideration of a writ petition raising a discovery issue may be appropriate if "an important issue of law needs clarification and public policy is served by this court's invocation of its original jurisdiction," such as when the petition provides "a unique opportunity to define the precise parameters" of a statutory privilege that this court has not previously interpreted. *Id.* (internal quotations omitted). Here, the challenged order focuses on the parameters of Nevada's news shield statute, raising issues that have not yet been addressed by this court. Accordingly, we elect to exercise our discretion to entertain the merits of this petition.

*Gentry met her burden of asserting the news shield privilege*

In considering a writ petition, this court gives deference to a district court's factual determinations but reviews questions of law de novo. *Gonski v. Second Judicial Dist. Court*, 126 Nev. ___, ___, 245 P.3d 1164, 1168 (2010). Construction of a statute is a question of law subject to our de novo review. *Kay v. Nunez*, 122 Nev. 1100, 1104, 146 P.3d 801, 804 (2006). If a statute is clear and unambiguous, we will apply its plain meaning. *Id.* at 1104, 146 P.3d at 804-05.

*Nevada's news shield privilege*

The Nevada news shield statute states in pertinent part that

> [n]o reporter, former reporter or editorial employee of any newspaper, periodical or press association or employee of any radio or television station may be required to disclose any published

or unpublished information obtained or prepared by such person in such person's professional capacity in gathering, receiving or processing information for communication to the public, or the source of any information procured or obtained by such person, in any legal proceedings, trial or investigation:

1. Before any court, grand jury, coroner's inquest, jury or any officer thereof.

NRS 49.275. As this court has previously explained, the statute "confers upon journalists an absolute privilege from disclosure of their sources and information in any proceeding" in order "to enhance the newsgathering process and to foster the free flow of information encouraged by the First Amendment to the U.S. Constitution."[4] *Diaz*, 116 Nev. at 94, 99, 993 P.2d at 54, 57.

*No affidavit requirement*

As a threshold matter, Aspen argues that the district court abused its discretion in granting Gentry's motion to quash because Gentry failed to support her motion with an affidavit demonstrating that the news shield statute applied to the information sought by the subpoena. In support of its argument, Aspen primarily relies on *Las Vegas Sun, Inc. v. Eighth Judicial Dist. Court*, 104 Nev. 508, 761 P.2d 849 (1988), *overruled on other grounds by Diaz*, 116 Nev. at 100-01, 993 P.2d at 58, in which the

---

[4]To the extent that the parties rely on cases from the federal courts of appeals in support of their respective positions, *see Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011); *Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995), we conclude that such cases do not apply to this analysis, as they relate to a qualified journalistic privilege developed under the federal common law, which is distinct from the state statutory privilege at issue here.

court noted its concern that no party claiming the privilege in that case had sworn to the facts supporting the claim in an affidavit. Stating that the privilege of nondisclosure should not be upheld in the absence of "compliance with the statutory requisites," the *Las Vegas Sun* court cautioned the parties that "[a]ny further claims [of privilege under NRS 49.275] should be supported by sworn affidavits, identifying the news gatherer and attesting that the information was obtained or produced during the news gathering process in that person's professional capacity." *Id.* at 515, 761 P.2d at 854.

Regardless of the language in *Las Vegas Sun*, nothing in the text of NRS 49.275 requires a party claiming the privilege to file an affidavit in support of a request for protection under the statute. *See Kay*, 122 Nev. at 1104, 146 P.3d at 804-05 (explaining that when the language of a statute is clear, this court will not go beyond it). Nor does NRCP 45(c)(3)(A)(iii), which provides that a district court shall quash or modify a subpoena on motion if the subpoena "requires disclosure of privileged or other protected matter," require an affidavit to support a claim of privilege. Thus, to the extent that *Las Vegas Sun* can be read as requiring a party to submit an affidavit in support of an assertion of the news shield statute, we overrule that case, and, instead, conclude that a request for protection under NRS 49.275 may be raised, as it was here, by a party's attorney in a motion to quash a subpoena, without the need to file a supporting affidavit, so long as the motion demonstrates that the information sought by the subpoena is facially protected by the news shield statute.

*The requested information is covered by Nevada's news shield privilege*

Having determined that no affidavit was required, we now turn to whether the information sought was within the scope of the

statute's protection. Aspen contends that the subpoena at issue did not seek information that was gathered in Gentry's professional capacity as a news reporter, and thus, that the information was not protected by NRS 49.275. We disagree.

In order to determine what information falls under the news shield statute, we must look to the language of the statute itself. *See Kay*, 122 Nev. at 1104, 146 P.3d at 804-05 (explaining that when the language of a statute is clear, this court will not go beyond it); *see also Diaz*, 116 Nev. at 97, 993 P.2d at 56 (recognizing that the language of the news shield statute is plain and unambiguous). As noted above, the statute protects from disclosure "any published or unpublished information obtained or prepared by [a reporter] in [his or her] professional capacity in gathering, receiving or processing information for communication to the public, or the source of any information procured or obtained by [the reporter]." NRS 49.275. Thus, the statute broadly protects any information that is gathered in the course of preparing a news story, as well as the sources of such information. *See id.*

While Aspen asserts that it has only sought information relating to Gentry in her personal capacity, the record demonstrates that this is not accurate. In particular, Aspen's claims in the action below allege that the investors improperly influenced Gentry to produce news stories favorable to them and unfavorable to Aspen. Thus, it appears from the face of the subpoena that, when read in the context of Aspen's claims, Aspen has requested the information sought in order to affirm its suspicions about Gentry's motivation for producing those news stories. Indeed, Aspen's arguments in the opposition to the motion to quash and in its writ petition confirm that this is its reason for serving Gentry with the

 

subpoena.[5] In other words, although Aspen claims that it is not seeking Gentry's sources because it already knows who those sources are, the circumstances of this case demonstrate that Aspen actually is effectively seeking to confirm the identities of Gentry's sources. As the identity of a reporter's source is information that is protected under the plain language of the news shield statute, *see* NRS 49.275 (protecting from disclosure "the source of any information procured or obtained by" a reporter), we conclude that the information sought was facially protected under the news shield statute.

*Aspen failed to overcome the news shield privilege*

Our conclusion that the information was facially protected does not necessarily end our inquiry, as we have previously recognized "that although the news shield statute provides an absolute privilege to reporters engaged in the newsgathering process, there may be certain situations, *e.g.*, when a defendant's countervailing constitutional rights are at issue, in which the news shield statute might have to yield so that justice may be served." *Diaz*, 116 Nev. at 101, 993 P.2d at 59. We need not consider whether this case presents such a situation, as Aspen has not identified any particular circumstances that would take this case outside of the usual application of the statute. Instead, Aspen has only argued that the information was not within the statute's protection in the first

---

[5]To the extent that this is not Aspen's purpose, Aspen has not explained how the information sought might be relevant or lead to relevant information regarding its claims or defenses in the action below.

Supreme Court
OF
Nevada

(O) 1947A

place. Thus, because the information was facially protected and Aspen has not identified any circumstances to overcome the application of the news shield statute, we conclude that the district court properly quashed the subpoena duces tecum.[6]

### CONCLUSION

We conclude that Gentry's motion to quash the subpoena properly asserted the news shield privilege and that Aspen failed to overcome this privilege. We, therefore, deny the petition for extraordinary relief.

_____, J.
Douglas

We concur:

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Saitta

---

[6]Because we conclude that the information sought was within the statute's protection, we need not address Aspen's contention that the district court's concern for Gentry's reputation was an improper basis for quashing the subpoena.

SUPREME COURT
OF
NEVADA

(O) 1947A