*1102 OPINION
By the Court,
Hardesty, J.:
In this appeal, we clarify the procedure by which a district court reviews local zoning and land use planning decisions. By statute, an aggrieved party’s challenge to zoning and planning decisions must now be presented by a petition for judicial review, rather than by a petition for a writ of mandamus.
Further, we decide whether the Clark County Board of Commissioners could properly enact zoning ordinances that allow the Clark County Planning Commission to waive certain otherwise required development standards. The Board is not constrained by a statute that limits variances to certain situations, as that statute applies only to boards of adjustments. And, even though NRS Chapter 278 does not expressly grant the Board the power to enact a waiver of development standards procedure, we conclude that NRS 278.315(1) unambiguously grants the Board the authority to enact an ordinance that gives the Planning Commission the power to grant special exceptions. The waiver of development standards procedure at issue in this appeal is one such exception.

FACTS

Respondent Oscar Nunez owns property just east of downtown Las Vegas, Nevada. Nunez proposed the development of a single, mixed-use 16-story building to replace three existing residential buildings on the property. The property’s zoning classification hindered this proposal because the property was zoned “H-l” (limited resort and apartment use). H-l zoning allows for a maximum of 50 dwelling units per acre; Nunez’s proposal, however, contained more than 130 dwelling units per acre.
Nunez sought to cure this impediment by applying for a nonconforming zone change to a “U-V” designation (urban village — mixed use) because the U-V designation is not limited by unit density restrictions. Additionally, the U-V designation allows the developer to combine residential, commercial, recreational, and open space components into a single urban center. Although not limited by unit density restrictions, the Clark County Code requires that the following U-V development standards be met: (1) buildings over 100 feet tall require a special use permit, and, in any case, no building may encroach into airport airspace;[1] (2) a height/ratio setback of 50 feet;[2] (3) 10 percent of the gross building floor area must be reserved for recreational space;[3] (4) 5 percent of the res *1103 idential floor area must constitute open space;[4] and (5) a certain number of parking spaces must be constructed.[5]
Because his proposed mixed-use building did not comply with these standards, however, Nunez requested that the U-V development standards be waived to permit him to construct the building under the following requirements: (1) a 185-foot-high building that encroaches into airport airspace; (2) a height/ratio setback of 10 feet; (3) a recreational area of only 16,255 square feet, instead of the minimum 39,393 square feet that was normally required; (4) an open space of only 9,163 square feet, instead of the minimum 17,634 square feet normally required; and (5) on-site parking of only 605 spaces instead of the otherwise required 644 spaces.
Both the Clark County Planning Commission Staff and the Paradise Town Board recommended approving Nunez’s application.[6] After a public hearing, the Clark County Planning Commission unanimously approved Nunez’s application.
Appellant James Kay, a resident of nearby Park Towers, administratively appealed the Planning Commission’s decision to the Board. Kay appeared at the Board’s subsequent public hearing through counsel to object to any waivers of existing development standards. The Board voted to approve the application and waive the Clark County Code’s U-V development standards as requested by Nunez.
Kay then filed petitions for judicial review and a writ of mandamus with the district court, contesting the Board’s authority to waive the U-V development standards contained in the Clark County Code. The district court entered an order denying both petitions. Kay now appeals.[7]

DISCUSSION

In this section, we first address the proper mechanism for seeking review of local zoning and planning decisions in the district court, which is through a petition for judicial review. We next consider a threshold issue raised by respondents: whether Kay had standing to seek judicial review in the district court. As the Board conceded that Kay had standing to administratively challenge the *1104 Planning Commission’s decision, Kay necessarily had standing to seek judicial review. Finally, we discuss whether the Board appropriately waived its development standards with respect to Nunez’s application. Since the Board is not constrained by statute as to what circumstances may warrant a variance and because the Board has properly enacted an ordinance providing the Planning Commission with power to grant exceptions to zoning regulations and restrictions, the development standards were appropriately waived.

Challenges to a board’s zoning and planning decisions should be made through a petition for judicial review

The procedure by which the district court reviews local zoning and planning decisions requires clarification. Past challenges to a governing board’s zoning and planning decisions have been presented to the district court through a petition for a writ of mandamus.[8] However, in 2001, the Legislature enacted NRS 278.3195(4), which states,
Any person who:
(a) Has appealed a decision to the [Board] in accordance with an ordinance adopted pursuant to [NRS 278.3195(1)]; and
(b) Is aggrieved by the decision of the [Board],
may appeal that decision to the district court ... by filing a petition for judicial review within 25 days after the date of filing of notice of the decision with the clerk or secretary of [the Board] ....
Statutory construction is a question of law, which this court reviews de novo.[9] Absent an ambiguity, this court follows a statute’s plain meaning.[10] NRS 278.3195(4) is clear and unambiguous, and thus, we follow its plain meaning. A party who has administratively appealed to the Board, under the local ordinance, may challenge the Board’s decision “by filing a [timely] petition for judicial review.”[11] As a mandamus petition is only appropriate if no adequate and speedy legal remedy exists,[12] and the Legislature has created the right to petition for judicial review, which constitutes an adequate and speedy legal remedy, mandamus petitions *1105 are generally no longer appropriate to challenge the Board’s final decision.
This change in procedure is significant. Unlike a petition for a writ of mandamus, which the district court has complete discretion to consider,[13] a petition for judicial review under NRS 278.3195(4) creates a right of review in the district court. Additionally, even if the district court exercises its discretion and considers a petition for mandamus relief, it should grant such relief only to compel the performance of an act that the law requires, or to control an arbitrary or capricious exercise of discretion.[14] In a petition for judicial review, however, the district court reviews the agency record to determine whether the Board’s decision is supported by substantial evidence.[15]
Moreover, this court’s standard of review differs depending on whether the party is appealing from a district court order resolving a mandamus petition or disposing of a petition for judicial review. When reviewing a district court order resolving a petition for mandamus relief, this court considers whether the district court has abused its discretion.[16] Conversely, when this court examines an order disposing of a judicial review petition, this court’s function is the same as the district court: to determine, based on the administrative record, whether substantial evidence supports the administrative decision.[17] Thus, this court affords no deference to the district court’s ruling in judicial review matters.
Here, Kay understandably challenged the district court’s order through both a petition for judicial review and a petition for a writ of mandamus. As the petition for judicial review was the proper mechanism, under NRS 278.3195, to invoke the district court’s jurisdiction to examine the administrative decision, Kay’s writ peti *1106 tion was inappropriate. Accordingly, we review this appeal as taken solely from the district court’s denial of Kay’s petition for judicial review.

Kay had standing to file a petition for judicial review

We now address a threshold issue raised by Nunez and the Board: whether Kay had standing to seek judicial review. The Board and Nunez argue that Kay lacked standing to challenge the Board’s decision in district court because he was not “aggrieved” under NRS 278.3195(4). They assert that he was required to show either a “special or peculiar” injury not suffered by the public as a whole or an adversely and substantially affected property right and that he failed to do so. Although we have required a “special or peculiar injury’ ’ in the context of street vacations[18] and have defined an “aggrieved party” for general appellate purposes as one whose personal or property right has been “adversely and substantially affected,”[19] the Legislature has substituted its own definition of “aggrieved” for purposes of local zoning and land use planning decisions.
Under NRS 278.3195(1), the Board must adopt an ordinance governing administrative appeals from local land use decisions, including those made by the Planning Commission. This ordinance must allow “any person who is aggrieved by” a planning commission decision to appeal to the governing body.[20] Subsection 1 then states that under the local ordinance in counties having a population of 400,000 persons or more, “a person shall be deemed to be aggrieved ... if the person appeared, either in person, through an authorized representative or in writing, before [the Planning Commission] on the matter which is the subject of the decision.”[21]
As discussed above, NRS 278.3195(4) governs a party’s standing to challenge the Board’s decision in the district court; it provides that a person who has appealed an administrative decision to the Board under the local ordinance and is aggrieved by the Board’s decision may file a petition for judicial review in the district court.
*1107 In this case, the Board conceded, at oral argument, that Kay had standing to appeal the Planning Commission’s decision to the Board under NRS 278.3195(1). Thus, the Board allowed that Kay was aggrieved by the Planning Commission’s decision. Even so, the Board asserts that a different standard for “aggrieved” necessarily applies when the person aggrieved by the planning commission’s decision ultimately files a petition for judicial review.
Applying a different standard for “aggrieved” in the context of a petition for judicial review challenging the Planning Commission’s decision would produce an absurd outcome, however.[22] If we were to conclude that NRS 278.3195’s definition of “aggrieved” for purposes of appealing a local zoning or planning decision to the Board does not apply to subsequent petitions for judicial review, then a person who is permitted by NRS 278.3195(1) to challenge the Planning Commission’s decision with the Board would not necessarily be permitted under NRS 278.3195(4) to petition for judicial review in order to challenge, judicially, the same Planning Commission decision. This result would make no sense, particularly since NRS 278.3195(4)’s authorization of judicial review petitions expressly applies to persons who have appealed the Planning Commission’s decision with the Board under NRS 278.3195(1).[23]
Thus, since the Board conceded that Kay had standing to challenge the Planning Commission’s decision with the Board, he necessarily had standing, under NRS 278.3195(4), to challenge the Planning Commission’s decision through a petition for judicial review.

Kay’s legal challenges to the Board’s decision are subject to de novo review

Although, in reviewing district court orders granting or denying judicial review petitions, our general appellate standard is to examine the Board’s decision for substantial evidence, Kay’s arguments on appeal present purely legal questions. He maintains that the Board could not grant a variance through its waiver of development standards for two reasons: (1) the narrow statutory standard for granting variances articulated in NRS 278.300 applies to the Board, and (2) the Board lacks authority under NRS Chapter 278 to enact a waiver of development standards. These statutory construction arguments present issues of law, and we may under *1108 take an independent review of the administrative construction of a statute.[24]

The variance standard contained in NRS 278.300 does not apply to the Board

Kay first argues that the Board was permitted to grant a variance only under the specific criteria articulated in NRS 278.300. This statutory provision states that variances may be granted by a county board of adjustment when a parcel’s shape or topographic conditions would result in exceptional practical difficulties to or hardships upon the landowner. Clark County, however, has not created a board of adjustment under its statutory discretion to do so.[25] Since NRS 278.300’s narrow criteria plainly apply only to boards of adjustment, they do not limit the Board’s authority to grant variances.

NRS Chapter 278 authorizes the Board to enact a waiver of development standards procedure

With regard to Kay’s challenge to the Board’s authority to waive development standards, NRS 278.250(1) states, “Within the zoning district, [the Board] may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land.” NRS 278.260(1) states, “The [Board] shall provide for the manner in which zoning regulations and restrictions and the boundaries of zoning districts are determined, established, enforced and amended.” Further, NRS 278.315(1) states that “[t]he [Board] may provide by ordinance for the granting of . . . special exceptions by the . . . planning commission.” Under Clark County Code § 30.40.330, the “[Planning Commission] may approve alternative development standards through the granting of a waiver of standards.”
The language of the above statutes, and particularly NRS 278.315(1), is clear and unambiguous. The Legislature has granted the Board the authority to regulate zoning, to amend those regulations, and to provide for special exceptions by the Planning Commission to such regulations. Thus, because there is no ambiguity in the statutes, this court follows the statutes’ plain meaning.
Here, the Board acted within the authority granted to it by the Legislature when it provided for a special exception to the U-V zoning regulations. This special exception is the waiver of devel *1109 opment standards procedure in Clark County Code § 30.40.330. Consequently, the waiver of development standards procedure falls within the authority the Legislature granted to the Board.[26] Therefore, we affirm the district court’s order denying Kay’s petition for judicial review.

CONCLUSION

Kay’s petition for judicial review under NRS 278.3195(4) was the appropriate procedure through which to obtain judicial review. And Kay was “aggrieved” for purposes of NRS 278.3195(4). We therefore consider Kay’s appeal from the portion of the district court’s order that denied the petition for judicial review.
Moreover, NRS 278.300 does not apply to the Board and NRS 278.315(1) expressly and unambiguously grants the Board the authority to enact a waiver of development standard procedure. Therefore, the waiver procedure contained in Clark County Code § 30.40.330 does not run afoul of the statutory provisions of NRS Chapter 278. Thus, the Board appropriately waived the U-V development standards in response to Nunez’s proposal. Accordingly, we affirm the district court’s order denying Kay’s petition for judicial review.
Maupin and Gibbons, JJ., concur.

 Clark County, Nev., Code tbl. 30.40-7.

 Id.

 Clark County, Nev., Code tbl. 30.40-6.

 Id.

 Clark County, Nev., Code tbl. 30.60-1.

 See Clark County, Nev., Code § 30.16.210(4) (“The approval authority may act upon such plans with consideration to recommendations from the Town Board . . . providing all requirements of this Title are met.”).

 Kay does not challenge the Board’s substantive decision to approve Nunez’s application. Rather, Kay contends that NRS Chapter 278 does not authorize the Board to waive the development standards procedure when approving nonconforming zoning applications.

 E.g., County of Clark v. Doumani, 114 Nev. 46, 952 P.2d 13 (1998).

 California Commercial v. Amedeo Vegas I, 119 Nev. 143, 145, 67 P.3d 328, 330 (2003).

 White v. Warden, 96 Nev. 634, 636 , 614 P.2d 536, 537 (1980).

 NRS 278.3195(4).

 NRS 34.170.

 Hickey v. District Court, 105 Nev 729, 731, 782 P.2d 1336, 1338 (1989) (stating that the decision to entertain a petition for a writ of mandamus lies within the court’s discretion).

 See NRS 34.160; Round Hill Gen. Imp. Dist. v. Newman, 97 Nev 601, 637 P.2d 534 (1981).

 See, e.g., State, Emp. Sec. Dep’t v. Harich Tahoe, 108 Nev 175, 177, 825 P.2d 1234, 1236 (1992).

 See DR Partners v. Bd. of County Comm’rs, 116 Nev 616, 621, 6 P3d 465, 468 (2000) (“A district court’s decision to grant or deny a writ petition is reviewed by this court under an abuse of discretion standard.”).

 Harich Tahoe, 108 Nev at 177, 825 P.2d at 1236; Barrick Goldstrike Mine v. Peterson, 116 Nev 541, 547, 2 P.3d 850, 853 (2000) (stating that “ ‘[t]he central inquiry is whether substantial evidence in the record supports the agency decision’ ” (quoting Brocas v. Mirage Hotel & Casino, 109 Nev. 579, 583, 854 P.2d 862, 865 (1993))).

 See L & T Corp. v. City of Henderson, 98 Nev. 501, 504, 654 P.2d 1015, 1016 (1982) (concluding that, in the context of seeking declaratory relief pertaining to street vacation, a challenger must demonstrate special or peculiar damage differing from the general public).

 Estate of Hughes v. First Nat’l Bank, 96 Nev. 178, 180, 605 P.2d 1149, 1150 (1980) (noting that a party is aggrieved, for appellate jurisdiction purposes, when “either a personal right or right of property is adversely and substantially affected”).

 NRS 278.3195(1).

 Id.

 See Harris Assocs. v. Clark County Sch. Dist., 119 Nev. 638, 642, 81 P.3d 532, 534 (2003) (noting that statutes should not be interpreted to produce absurd results).

 See Building & Constr. Trades v. Public Works, 108 Nev. 605, 610, 836 P.2d 633, 636 (1992) (noting that “[w]hen construing a specific portion of a statute, the statute should be read as a whole”).

 Coast Hotels v. State, Labor Comm’n, 117 Nev. 835, 839, 34 P.3d 546, 549 (2001).

 See NRS 278.270.

 Kay argues that under this court’s decision in Falcke v. Douglas County, 116 Nev. 583, 3 P.3d 661 (2000), the waiver of development standards conflicts with NRS 278.300(1) and thus is invalid. We disagree because unlike the statutory scheme discussed in Falcke, 116 Nev. at 589, 3 P.3d at 664, NRS Chapter 278 does not contain a particular provision denying the Board the authority to create a waiver of development standards procedure. Thus, in accordance with the reasoning in Falcke, we conclude that the Legislature’s silence on the issue reflects the Legislature’s intent to allow the Board to create a waiver of development standards procedure.